John William KNIGHT, Jr., Appellant,

v.

Suzi Benear KNIGHT, Appellee.

No. 08-02-00321-CV.

Court of Appeals of Texas,
El Paso.

Feb. 5, 2004.

John William Knight Jr., Austin, pro se.

J.K. 'Rusty' Wall, Law Office of J.K. Rusty Wall, Midland, for Appellee.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## *OPINION*

ANN CRAWFORD McCLURE, Justice.

This is an appeal from a final decree of divorce dissolving the marriage of John and Suzi Knight. The trial court ordered John to pay child support of $761 per month. It also entered a judgment for retroactive support in the total sum of $30,249.61, payable in monthly increments of $500. On appeal, John contends that the trial court abused its discretion in setting child support because there was no evidence presented of his current income. He further argues that he did not receive sufficient notice of the final hearing. We affirm.

## FACTUAL SUMMARY

John and Suzi were married on September 13, 1975 and separated on November 16, 1998 when John abandoned the family. He moved to New Mexico, taking with him essentially all assets of any monetary value. Suzi filed for divorce on May 12, 1999.

Service was attempted upon John at his residence in Albuquerque. When that proved unsuccessful, Suzi filed a motion for alternative service, supported by an affidavit reflecting that John was intentionally avoiding service. The trial court authorized substituted service and on June 14, 1999, the agent affixed to the door of John's apartment the original petition for divorce, the order for substitute service, a temporary restraining order, and an order setting a hearing for temporary orders. On September 13, 1999, Paul Higdon was appointed as the attorney ad litem for John. The Honorable Dean Rucker signed an order on August 8, 2001 setting the case for trial on the merits at 1:30 p.m. on December 4, 2001.

Because Higdon moved from Midland to Houston, Brian Carney was substituted as the ad litem, with an order of appointment signed on October 24, 2001. On November 29, 2001, Carney notified John via Federal Express that the final hearing was set for December 4. In his letter, Carney asked John if he wanted the hearing postponed so that he could attend. John telephoned Carney on December 2 and indicated that he did not intend to appear at the hearing. The hearing was ultimately reset for De-

cember 31 but John was not notified of the date change and did not appear.

In her petition for divorce, Suzi sought sole managing conservatorship of the couple's two children. By the time of the final hearing, their son had turned eighteen years old; their daughter was in high school and would turn eighteen within three months. Because she had not been receiving any financial support during the separation, Suzi asked for both current and retroactive child support. While the divorce was pending, Suzi discovered that John had cashed in a life insurance policy for $25,000 and had sold company equipment for approximately $50,000. John converted these assets into cash and deposited the proceeds into an unknown bank account. Suzi also discovered that John was making withdrawals from his retirement accounts, creating huge tax liabilities.

■ During trial, Suzi introduced tax records for calendar year 1998 reflecting income of nearly $60,000. Because she had not seen her husband since he moved out, Suzi's child support claim was based solely upon John's 1998 earnings. Following a bench trial, the court ordered retroactive child support in the amount of $30,249.61 covering the period between the date of separation—November 16, 1998—and the date of trial—December 31, 2001.[1] The judgment was payable in monthly installments of $500. John was further or-

dered to pay support for his daughter in the amount of $761 per month.[2] He timely filed a motion for new trial which was denied by the trial court. This appeal follows without the benefit of either traditional or statutory findings of fact and conclusions of law.

## STANDARD OF REVIEW

John's issues for appellate review incorporate both the abuse of discretion and sufficiency standards of review. We first address the distinctions between them and how they overlap in the family law arena.

A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact-finding. *In the Interest of De La Pena*, 999 S.W.2d 521, 532 (Tex.App.-El Paso 1999, no pet.). When reviewing a legal sufficiency complaint, we consider only the evidence and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001). "Insufficient evidence" or factual insufficiency involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. *Bates v. Tesar*, 81 S.W.3d 411, 425 (Tex.App.-El Paso 2002, no pet). The test for factual insufficiency is set forth in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In reviewing an issue asserting

---

1. Retroactive support is available in two separate circumstances. First, it can be ordered in instances where child support has not been previously ordered. TEX.FAM.CODE ANN. § 154.009 (Vernon 2002); *In the Interest of J.G.Z.*, 963 S.W.2d 144, 146 (Tex.App.-Texarkana 1998, no pet). Secondly, a trial court has the discretion to retroactively modify a child support obligation. TEX.FAM.CODE ANN. § 156.401(b); *In re Tucker*, 96 S.W.3d 662, 667 (Tex.App.-Texarkana 2003, no pet.). The former provision is applicable here. The purpose of allowing retroactive child support is

to remove any motive on the part of the obligor to engage in delay tactics. *In re H.S.N.*, 69 S.W.3d 829, 833 (Tex.App.-Corpus Christi 2002, no pet.); *J.G.Z.*, 963 S.W.2d at 149.

2. By the time of the hearing on the motion for new trial, the couple's daughter had turned eighteen and graduated from high school. As a result, there is no current child support obligation.

that a finding is against the great weight and preponderance of the evidence, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact, as well as evidence which tends to disprove its existence. It is for the fact finder to determine the weight to be given to the testimony and to resolve any conflicts in the evidence. *See Carrasco v. Goatcher,* 623 S.W.2d 769, 772 (Tex. App.-El Paso 1981, no writ).

■ Most orders arising from a suit affecting the parent/child relationship will not be disturbed on appeal unless the complaining party can demonstrate a clear abuse of discretion. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *Hodson v. Keiser,* 81 S.W.3d 363, 367 (Tex.App.-El Paso 2002, no pet.). In the child support context, an appellant may challenge the sufficiency of the evidence to support a finding of net resources, a finding of the proven needs of the child, a finding of voluntary unemployment or underemployment, or a finding of a material and substantial change in circumstances. Our analysis employs a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion, and (2) did the trial court err in its application of discretion? *Hodson,* 81 S.W.3d at 367; *Lindsey v. Lindsey,* 965 S.W.2d 589, 592 (Tex.App.-El Paso 1998, no pet.). The traditional sufficiency inquiry applies to the first question. *Id.* Once we have determined whether sufficient evidence exists, we must then decide whether the trial court made a reasonable decision. In other words, we must conclude that the ruling was neither arbitrary nor unreasonable. *Hodson,* 81 S.W.3d at 367. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion

has occurred. *Southwestern Bell Telephone Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex.1965); *Jones v. Strayhorn,* 159 Tex. 421, 321 S.W.2d 290, 295 (1959). An abuse of discretion does not occur as long as some evidence of a substantive and probative character supports the trial court's decision. *See In the Interest of Gonzalez,* 993 S.W.2d 147, 155 (Tex.App.-San Antonio 1999, no pet.); *D.R. v. J.A.R.,* 894 S.W.2d 91, 95 (Tex.App.-Fort Worth 1995, writ denied).

## EVIDENCE OF CURRENT INCOME

■ In Issues One and Two, John challenges the child support orders, both current and retroactive, because they were based on income figures for calendar year 1998. He contends that in the absence of evidence concerning his current income, the trial court was required to calculate support on the basis of minimum wage. *See* Tex.Fam.Code Ann. § 154.068. This issue has been waived inasmuch as the argument was not urged in the trial court. On appeal, a party is confined to the grounds of objection as stated in the trial court. *Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex.1997); *Texas Department of Transportation v. Olson,* 980 S.W.2d 890, 898 (Tex.App.-Fort Worth 1998, no pet.). A party cannot enlarge his complaint on appeal. *See Perez v. Baker Packers,* 694 S.W.2d 138 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Cusack v. Cusack,* 491 S.W.2d 714 (Tex.Civ.App.-Corpus Christi 1973, writ dism'd). We are hard pressed to fault Judge Rucker for failing to consider a theory which was not presented to him. *See* Tex.R.App.P. 33.1(a)(1)(A)(as a prerequisite to presenting a claim for appellate review, the record must show that the complaint was made to the trial court by a timely motion that stated the grounds for the ruling that the complaining party sought). John's motion for new trial did not raise the issue, nor

did his counsel mention it in his argument to the court. Instead, the trial court was asked to grant a new trial in order to allow John to present evidence of his current income. Consequently, we will not address the applicability of the minimum wage statute. We do address, however, John's collateral complaint that the support order was not predicated upon current income.

In assessing child support, a trial court first determines the net resources of the parties. The court then ascertains the number of children before it, determines the percentage of net resources the non-custodial parent would pay under the statutory guidelines, and then considers whether any additional factors would justify varying from those guidelines. TEX. FAM.CODE ANN. § 154.125. The court may order support above or below the guideline amount if the evidence rebuts the presumption that application of the guidelines is in the best interest of the children and justifies a variance from the guidelines. TEX.FAM.CODE ANN. § 154.123(a). A court may order either or both parents to support a child in the manner specified by the order until the child is eighteen years of age or until graduation from high school, whichever occurs later. TEX.FAM.CODE ANN. § 154.001. Since only one of the children was under eighteen at the date of divorce, the percentage of net resources to be allocated is twenty percent. TEX.FAM. CODE ANN. § 154.123(a). For purposes of our analysis, "net resources" includes all wage and salary income, self-employment income, and all other income actually being received, including capital gains. See TEX. FAM.CODE ANN. § 154.062(b). The court shall require a party to furnish information sufficient to accurately identify that party's net resources and ability to pay child support; and produce copies of income tax returns for the past two years, a financial statement, and current pay stubs. TEX. FAM.CODE ANN. § 154.063.

John absented himself from trial and his attorney presented no evidence. While the reporter's record reflects that John was present at the hearing on the motion for new trial, he did not testify. The clerk's record contains the motion for new trial. Attached to it are John's affidavit and records from his employer indicating income of roughly $2,100 a month. Also attached are the first pages of a 2000 and 2001 federal income tax return. The returns are not complete and do not reveal a signature. More critical, however, is the fact that neither the affidavit nor the attachments were introduced into evidence, even assuming they were admissible. Consequently, there was no evidence ever presented to the court concerning John's current income.

Thus, we must address whether the trial court could properly base a support order upon John's 1998 income. The Texarkana Court of Appeals has determined that a trial court may predicate child support on former certain income as opposed to current uncertain income. See In re Marriage of Bertram, 981 S.W.2d 820 (Tex. App.-Texarkana 1998, no pet.). Mr. Bertram was employed by an automobile dealership. When the trial began on November 26, 1996, he testified that he earned approximately $2,080 each month. Pursuant to the guidelines, his child support obligation for two children would be $426.55, and indeed, $426 was the amount of support he had been paying under the temporary orders. The trial was recessed to allow the parties to attend a marriage seminar with the hope that reconciliation might be possible. When the trial reconvened on March 17, 1997, Mr. Bertram testified that his job title had changed and that his method of compensation had changed from salary to commission. He

now drew $350 per week against a quarterly commission check and pay stubs were introduced revealing gross monthly income of $1,800; appropriate calculations demonstrated that his monthly net resources were $1,474.17. Based on this sum, his child support obligation would total $369. At the conclusion of the trial, the court ordered child support of $426 per month. Mr. Bertram appealed, complaining that the trial court had predicated the support order on his former income rather than his income at the time of the final order. His wife countered that because he could not give a set figure for compensation since he had only worked on a commission basis for five weeks, the trial court had not abused its discretion in establishing permanent support based on his former salary. The appellate court noted that although the trial judge apparently accepted that there had been a salary change, the judge was not compelled to accept Mr. Bertram's opinion as to his projected annual income because of the short interval for calculating income based on commission. *In re Marriage of Bertram,* 981 S.W.2d at 828.

We have previously determined that a trial court must have the discretion to fashion a child support order based on the peculiarities of the income at issue. *Norris v. Norris,* 56 S.W.3d 333, 341 (Tex. App.-El Paso 2001, no pet.). The use of former income was upheld in *Bertram.* Where income and net resources vary a great deal from month to month, it may only be possible to state a range of net resources. *Ikard v. Ikard,* 819 S.W.2d 644, 649 (Tex.App.-El Paso 1991, no writ). In *Norris,* we affirmed a trial court's decision to average the gross monthly resources for 1997 and 1998 to reach an average gross monthly income from which net monthly resources were calculated. *Norris,* 56 S.W.3d at 341. Here, the trial

court was faced with an obligor who had abandoned the family and moved out of state. He refused to accept certified mail addressed to him. He evaded service of process. He did not communicate with his wife or his children for three years, during which time he resided out of subpoena range. He told his attorney at litem that he did not intend to appear for the final hearing. Although he appeared for the hearing on the motion for new trial, he did not testify, nor did he offer into evidence any documentation of his current income. We find no abuse of discretion in the trial court's consideration of John's prior income. Given the evidence that John reported $60,000 in annual income, his gross monthly income would approximate $5,000. Applying the appropriate tax tables as promulgated by the Office of the Attorney General, John would have net monthly income of $3,795.83. Twenty percent of this figure would be $759.16. This is remarkably close to the $761 in current child support which the trial court ordered. Similarly, by multiplying the monthly support by the 38 months during which John contributed nothing to his children, we arrive at $28,848.08. Again, this is remarkably close to the arrearage judgment of $30,249.61. Without the benefit of findings of fact, we can only speculate that the slight discrepancy may result from the application of pre-judgment interest. Consequently, the evidence was both legally and factually sufficient to support the child support orders. Issues One and Two are overruled.

### NOTICE OF HEARING

In his third issue, John complains that he did not receive notice of the date of the final divorce hearing and therefore was denied due process. He does not deny that he knew a divorce was pending and that a final hearing was set for December 4, 2001. Instead, he complains that he did

not receive notice that the case was reset from December 4 to December 31.

 No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. Tex. Const. art. I, § 19. Due process, at a minimum, requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see University of Texas Medical School at Houston v. Than,* 901 S.W.2d 926, 930 (Tex.1995); *House of Tobacco, Inc. v. Calvert,* 394 S.W.2d 654, 657–58 (Tex.1965). The process due is measured by a flexible standard depending on the practical requirements of the circumstances. *Mathews,* 424 U.S. at 334, 96 S.Ct. 893, 47 L.Ed.2d 18; *see Goss v. Lopez,* 419 U.S. 565, 575–78, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

 It is presumed that the trial court will hear a case only when notice has been given to the parties. *Turner v. Ward,* 910 S.W.2d 500, 505 (Tex.App.-El Paso 1994, no writ). To overcome this presumption, an appellant must affirmatively show a lack of notice. *Hanners v. State Bar of Texas,* 860 S.W.2d 903, 908 (Tex.App.-Dallas 1993, writ dism'd). This burden is not discharged by mere allegations, unsupported by affidavits or other competent evidence, that proper notice was not received. *Id.* at 908.

 It is undisputed that John had notice of the December 4 setting. It is also undisputed that no one told him the hearing had been reset to December 31. Our rules of procedure provide that the trial court may set contested cases for trial

---

upon forty-five days' notice of the first trial setting. Tex.R.Civ.P. 245. The court may reset a case to a later date upon reasonable notice to the parties. *Id.* Every notice required by the rules may be served by delivering a copy to the party or his duly authorized agent or attorney of record. Tex.R.Civ.P. 21a. Although John did not have forty-five days' notice of the December 4 setting [3] and he had no notice of the resetting, his attorneys certainly did. In his letter, Carney inquired whether John wanted a postponement so that he could appear personally. John responded that he did not intend to appear. Carney appeared on his behalf and participated in the hearing. With regard to the resetting, we conclude that notice to the parties' attorneys was reasonable notice as required by the rules. *Hilal v. Gatpandan,* 71 S.W.3d 403, 407 (Tex.App.-Corpus Christi 2001, no pet.). Finding no denial of due process, we overrule Issue Three and affirm the judgment of the trial court below.

---

**3.** John does not complain that he had less than forty-five days' notice of the December 4 setting.