# NO. 12-15-00070-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF J. R.,* | § | *APPEAL FROM THE* |
| *A CHILD* | § | *COUNTY COURT AT LAW NO. 2* |
| | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

J.R. appeals the trial court's final order in a suit affecting the parent-child relationship. On appeal, he presents two issues. We affirm.

### BACKGROUND

J.R. is the father of J.R.1,[1] born May 21, 2005. The mother of the child, L.R., is not a party to this appeal. On September 5, 2013, the Department of Family and Protective Services (the Department) filed an original petition for protection of the child, for conservatorship, and for termination of J.R.'s parental rights. The Department was appointed temporary managing conservator of the child, and J.R. was appointed temporary possessory conservator with limited rights and duties.

Following a bench trial, the court rendered an order appointing P.S., the child's maternal great-aunt, as the permanent managing conservator of J.R.1., and J.R. as the possessory conservator of the child. J.R. was granted standard visitation along with specific terms of

---

[1] The initials of the father and his child are the same. Therefore, we will refer to the father as J.R. and to his child as J.R.1.

visitation for spring break and summer visitations in 2015. He was also ordered to pay child support in the amount of $200.00 per month. The trial court filed findings of fact and conclusions of law. This appeal followed.

<u>STANDARD OF REVIEW</u>

A court's order on conservatorship and child support issues will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *see also In re J.D.D.*, 242 S.W.3d 916, 919 (Tex. App.—Dallas 2008, pet. denied) (trial court has broad discretion on child support issues); *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (conservatorship determinations subject to review for abuse of discretion). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner or when it acts without reference to any guiding rules or principles. *In re J.D.D.*, 242 S.W.3d at 920 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)).

In family law cases, legal and factual insufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *Watson v. Watson*, 286 S.W.3d 519, 522 (Tex. App.—Fort Worth 2009, no pet.). To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two prong inquiry: (1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion? *Id.* at 522–23. The traditional sufficiency inquiry applies to the first question. *Knight v. Knight*, 131 S.W.3d 535, 539 (Tex. App.—El Paso 2004, no pet.). Once we have determined whether sufficient evidence exists, we must then decide whether the trial court made a reasonable decision. *Id*. In other words, we must conclude that the ruling was neither arbitrary nor unreasonable. *Id.* In the absence of such a clear abuse of discretion, an appellate court should not substitute its judgment for that of the trial court. *In re M.L.W.*, 358 S.W.3d 772, 774 (Tex. App.—Texarkana 2012, no pet.); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005) ("A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within [the] zone of reasonable disagreement.")

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.).

Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When the appellate record contains a reporter's record as it does in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Fulgham*, 349 S.W.3d at 157. We review a trial court's conclusions of law de novo. *Quick v. Plastic Solutions of Tex., Inc.*, 270 S.W.3d 173, 181 (Tex. App.—El Paso 2008, no pet.). Erroneous conclusions of law are not binding on the appellate court, but if the controlling findings of fact will support a correct legal theory, are supported by the evidence, and are sufficient to support the judgment, the adoption of erroneous legal conclusions will not mandate reversal. *Id.*

### MANAGING CONSERVATOR

In his first issue, J.R. argues that the trial court abused its discretion by appointing a nonparent as J.R.1's permanent managing conservator. He contends that the evidence is legally and factually insufficient to overcome the presumption that appointment of a parent as managing conservator is in the best interest of the child.

## Applicable Law

A trial court must appoint a child's parents to be joint managing conservators, or one parent as the sole managing conservator, unless it concludes that "appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." TEX. FAM. CODE ANN. § 153.131(a) (West 2014). It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. TEX. FAM. CODE ANN. § 153.131(b) (West 2014). A finding of a history of family violence involving the parents of a child removes the presumption. *Id.* "Family violence" is defined as an act by a member of a family or household against another member of the family or household that it intended to result in physical harm, bodily injury, assault, or sexual assault. *See* TEX. FAM. CODE ANN. §§ 71.004(a), 101.0125 (West 2014).

In conservatorship issues, the court's primary consideration always is the child's best interest. TEX. FAM. CODE ANN. § 153.002 (West 2014). In analyzing the best interest of a child, we use the *Holley* factors as a guide, which include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional

3

and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

As evidence to rebut the parental presumption, the Department was required to show specific acts or omissions by J.R. that support a logical inference that some specific, identifiable behavior or conduct of his will probably result in harm to the child. *In re M.W.*, 959 S.W.2d 661, 665 (Tex. App.—Tyler 1997, writ denied). Consequently, there must be direct evidence that placement of J.R.1 with J.R. would significantly impair J.R.1's physical health or emotional development or that allows the fact finder to reasonably reach that conclusion. *In re De La Pena*, 999 S.W.2d 521, 528 (Tex. App.—El Paso 1999, no pet.). The focus is on the effect of the placement, not on the circumstances that produced the placement. *In re R.T.K.*, 324 S.W.3d 896, 902 (Tex. App.–Houston [14th Dist.] 2010, pet. denied).

## The Evidence

In its findings of fact and conclusions of law, the trial court found that the appointment of J.R. as managing conservator would not be in J.R.1's best interest because the appointment would significantly impair the child's physical health or emotional development. The Department agrees, arguing that the evidence is sufficient to rebut the parental presumption.

At trial, the evidence showed that J.R.1 was nine years old and her two half-siblings, T.R. and C.F., were eight years old and almost two years old, respectively. Their mother, L.R., admitted that she had a drug problem that led the Department to remove the children and place them with her maternal aunt, P.J., in September 2013. L.R. acquiesced to the appointment of P.J. as J.R.1's permanent managing conservator.

The evidence showed further that J.R. had little contact with J.R.1 before this case began. He was incarcerated in Louisiana two months after J.R.1 was born in 2005. He saw her once or twice before he was incarcerated for five years beginning in 2007. He was released from prison in May 2012 and saw her once that year. J.R. claimed that he saw J.R.1 frequently in 2013 and was granted visitation for six hours once a month beginning November 2013. He was also

4

granted telephone access. He admitted that once, he called J.R.1, asked her what she had to eat that day, and ended the telephone call. According to J.R., J.R.1 was his daughter and "anything [he] want[ed] to ask her, [he would] ask her." J.R. testified that after November 2014, he moved twice over the next few months. He had not visited J.R. since November 2014 or called her in over a month. J.R. admitted that he did not see J.R.1 in January even though he did not move that month. He was asked why he failed to visit J.R.1 in January. J.R. responded "[w]hy waste my money every month, man, visit her every month if I'm not going to get her? That's crazy as hell; I mean, that's real crazy."

The Department also presented evidence that J.R's home life might cause J.R.1 harm. He lived with his girlfriend and the girlfriend's five children in Louisiana. J.R.1 has met the girlfriend once or twice, seen the children once, and never been to J.R.'s house. The Department employees, the CASA volunteer, and J.R.1's caregiver had never met or had any interaction with J.R.'s girlfriend or her children. J.R.1's foster care supervisor, Samantha Skinner, likened it to taking J.R.1 from everything she knows to moving her in with perfect strangers. The Department was also concerned about J.R.'s household because a home study was denied due to unresolved criminal charges for both J.R. and his girlfriend, and he had moved since the home study was performed.

J.R. has an extensive criminal history. He was arrested for numerous offenses before 2007 including simple assault; manufacturing, distribution, and possession of a narcotic; possession of marijuana; four counts of vehicle burglary; and simple burglary. He was incarcerated for five years beginning in 2007 after his community supervision was revoked, and has been arrested three times since his release from prison.

The trial court found that J.R. has a history of family violence involving L.R. and "conducted in the presence of the child." L.R. testified J.R. was very jealous and antisocial. She said that before he went to prison, she was staying with him at his sister's house. They argued because she was paying too much attention to J.R.1. According to L.R., J.R. pushed the child. She called law enforcement, left the house, and went to a family shelter. J.R. denied pushing J.R.1.

The evidence also showed that J.R.1 could suffer severe physical and emotional harm if she was separated from her maternal great-aunt, P.J., and her siblings. The trial court found that J.R.1 was closely bonded to P.J. and that she had been the only person to consistently care for

her for the majority of her life. P.J. testified that the children lived with her for approximately two years beginning when J.R.1 was about four years old. After L.R. moved out of P.J.'s house and before the children were removed, P.J. checked on the children every day.

The trial court further found that J.R.1 was "very closely bonded" with T.R., her half-sister, and that the separation from her siblings, especially T.R., would significantly impair her emotional development. The trial court found that the child was "exceedingly emotionally attached" to T.R. Skinner, the CASA volunteer, L.R., and P.J. were all very concerned about separating the two girls. In its findings, the trial court stated that J.R.1 advised the court that she wanted to remain in P.J.'s home with her siblings although she would like to have visitation with her father. She told the CASA volunteer that she would like to visit her father, but that if T.R. could not go, she would not like to live with him. J.R.1 repeated this assertion to P.J. and Skinner. J.R. appeared to be unconcerned about J.R.1 being separated from T.R. even though he did not believe it was a good idea to split J.R.1 from her siblings.

Other evidence showed that J.R.1 has had problems in school with reading and math, and her grades dropped after she was removed from her mother. J.R. admitted that he did not know J.R.1 had a reading problem. He was unaware of studies showing the problems that might develop if siblings who are extremely close are separated. Even though he was asked after the August 2014 hearing to help J.R.1 if she came to live with him, he had failed to do so because he had been "too busy."

## Conclusion

By making an affirmative finding of family violence, the trial court removed the presumption that it is in the best interest of the child for J.R. to be appointed as a managing conservator. *See* TEX. FAM. CODE ANN. § 153.131(b). After reviewing the record, we hold that the evidence supports the trial court's findings that J.R. had an extensive criminal history, a history of family violence, and very little contact with the child, and that separating the child from P.J. and the child's siblings would significantly impair her emotional development and result in emotional harm. Accordingly, we conclude the trial court did not abuse its discretion by finding that the appointment of J.R. as managing conservator was not in the child's best interest because it would significantly impair her physical health and emotional development. We overrule J.R.'s first issue.

In his second issue, J.R. contends the evidence is legally and factually insufficient to support the trial court's finding ordering him to pay child support.

**Applicable Law**

The court may order either or both parents to support a child in the manner specified by the order. TEX. FAM. CODE ANN. § 154.001 (West 2014). In other words, each party has a duty to support his or her minor child. *Villasenor v. Villasenor*, 911 S.W.2d 411, 419 (Tex. App.—San Antonio 1995, no writ). The duty to support a child is not limited to a parent's ability to pay from current earnings, but also extends to his financial ability to pay from any and all sources that might be available. *In re Striegler*, 915 S.W.2d 629, 638 (Tex. App.—Amarillo 1996, writ denied); *Roosth v. Roosth*, 889 S.W.2d 445, 455 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *Musick v. Musick*, 590 S.W.2d 582, 586 (Tex. Civ. App.—Tyler 1979, no writ).

In assessing child support, the trial court must calculate net resources for the purposes of determining child support liability. TEX. FAM. CODE ANN. § 154.062(a), (b) (West 2014); *Newberry v. Bohn–Newberry*, 146 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2004, no pet.). In the absence of evidence of the wage and salary income of a party, the court shall presume that the party has wages or salary equal to the federal minimum wage for a forty hour week. TEX. FAM. CODE ANN. § 154.068 (West 2014).

**Analysis**

J.R. argues that he is considered disabled and receives SSI benefits (supplemental security income) for that disability. These benefits, he contends, are not resources under the Texas Family Code. *See* TEX. FAM. CODE ANN. § 154.062(b). The trial court found that J.R. receives social security disability payments because of a speech impediment. According to Texas Family Code Section 154.062, resources for calculating child support include social security benefits and disability benefits, but not supplemental security income. *See id.* § 154.062(b)(5).

However, the trial court did not base its calculation of J.R.'s net resources on his SSI benefits. Instead, the court found that J.R. presented no evidence that he was incapable of working a minimum wage job. According to the trial court, J.R. babysits, cooks, and teaches his girlfriend's youngest child every day. Therefore, the trial court found that J.R. had monthly net

resources equal to the federal minimum wage for a forty hour week and ordered him to pay eighteen percent of his presumed net resources as child support. *Id*. § 154.068.

The evidence supports the trial court's findings. J.R. testified at length about taking care of his girlfriend's youngest children each day, including teaching and working with them. He said that he washes the family's clothes, cooks a big meal every day, and does "anything [the other children] want him to do." Nowhere does he state that he is unable to work at a minimum wage job. In the absence of proof to the contrary, the trial court was authorized to presume that J.R. earned the minimum wage. J.R. argues that the trial court cannot presume that he has income equal to the federal minimum wage for a forty hour week because the statute applies only if there is no evidence of resources. However, he cites no authority for this proposition.

Because J.R. presented no evidence at trial on the value of his net resources and his alleged inability to earn any income, the trial court did not abuse its discretion in ordering him to pay child support in accordance with the federal minimum wage. *See Reyes v. Reyes*, 946 S.W.2d 627, 630 (Tex. App.—Waco 1997, no writ). We overrule J.R.'s second issue.

## DISPOSITION

Having overruled both of J.R.'s issues, we *affirm* the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered September 2, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### SEPTEMBER 2, 2015

### NO. 12-15-00070-CV

### IN THE INTEREST OF J. R., A CHILD

Appeal from the County Court at Law No. 2
of Angelina County, Texas (Tr.Ct.No. CV-02586-13-09-A)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*