# NO. 12-18-00243-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | *§* | *APPEAL FROM THE* |
| *M.M. AND J.M.,* | *§* | *COUNTY COURT AT LAW NO. 2* |
| *CHILDREN* | *§* | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

C.M. appeals the trial court's final order in a suit affecting the parent-child relationship. On appeal, she contests the appointment of the maternal grandmother, H.M., as managing conservator for her children. We affirm.

## BACKGROUND

C.M. is the mother of M.M. and J.M. The fathers of the children are not parties to this appeal.[1] On January 14, 2016, the Department of Family and Protective Services (the Department) filed an original petition for protection of the children, for conservatorship, and for termination of C.M.'s parental rights. The Department was appointed temporary managing conservator of the children, and C.M. was appointed temporary possessory conservator with limited rights and duties.

Following a bench trial, the court rendered an order appointing H.M., the children's maternal grandmother, as the permanent managing conservator of M.M. and J.M., and C.M. as the possessory conservator of the children. C.M. was granted weekly supervised visitation and ordered to pay child support in the amount of $200.00 per month. This appeal followed.

---

[1] On December 8, 2011, the district court of Trinity County found that the father of M.M., M.M.M., executed an unrevoked or irrevocable affidavit of relinquishment of parental rights and that termination of the parent-child relationship was in the best interest of the child. Therefore, the trial court ordered that the parent-child relationship between M.M.M. and M.M. be terminated. The father of J.M., H.H., died on April 20, 2016.

STANDARD OF REVIEW

A court's order on conservatorship and child support issues will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *see also **In re J.D.D.***, 242 S.W.3d 916, 919 (Tex. App.—Dallas 2008, pet. denied) (trial court has broad discretion on child support issues); ***In re J.A.J.***, 243 S.W.3d 611, 616 (Tex. 2007) (conservatorship determinations subject to review for abuse of discretion). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner or when it acts without reference to any guiding rules or principles. ***In re J.D.D***., 242 S.W.3d at 920 (citing ***Downer v. Aquamarine Operators, Inc.***, 701 S.W.2d 238, 241-42 (Tex. 1985)).

In family law cases, legal and factual insufficiency are not independent grounds of error but are relevant factors of our assessment of whether the trial court abused its discretion. ***Watson v. Watson***, 286 S.W.3d 519, 522 (Tex. App.—Fort Worth 2009, no pet.). To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two pronged inquiry: (1) whether the trial court had sufficient evidence upon which to exercise its discretion, and (2) whether the trial court erred in its application of that discretion. *Id.* at 522–23. The traditional sufficiency inquiry applies to the first question. ***Knight v. Knight***, 131 S.W.3d 535, 539 (Tex. App.—El Paso 2004, no pet.). Once we have determined whether sufficient evidence exists, we must then decide whether the trial court made a reasonable decision. *Id.* In other words, we must conclude that the ruling was neither arbitrary nor unreasonable. *Id.* In the absence of such a clear abuse of discretion, an appellate court should not substitute its judgment for that of the trial court. ***In re M.L.W.***, 358 S.W.3d 772, 774 (Tex. App.—Texarkana 2012, no pet.); *see also **City of Keller v. Wilson***, 168 S.W.3d 802, 822 (Tex. 2005) ("A reviewing court cannot substitute its judgment for the trier-of-fact, so long as the evidence falls within [the] zone of reasonable disagreement.").

## MANAGING CONSERVATOR

In her sole issue, C.M. argues that the evidence is legally and factually insufficient to establish that appointment of her as managing conservator of the children would not be in their best interest because the appointment would significantly impair their physical health or emotional development.

**Applicable Law**

A trial court must appoint a child's parents to be joint managing conservators, or one parent as the sole managing conservator, unless it concludes that "appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." TEX. FAM. CODE ANN. § 153.131(a) (West 2014). It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. *Id.* § 153.131(b) (West 2014). As evidence to rebut the parental presumption, the Department is required to show specific acts or omissions by C.M. that support a logical inference that some specific, identifiable behavior or conduct of hers will probably result in harm to the children. *See Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). Consequently, there must be direct evidence that placement of M.M. and J.M. with C.M. would significantly impair M.M.'s and J.M.'s physical health or emotional development or that allows the fact finder to reasonably reach that conclusion. *See In re De La Pena*, 999 S.W.2d 521, 528 (Tex. App.—El Paso 1999, no pet.). The focus is on the effect of the placement, not on the circumstances that produced the placement. *In re R.T.K.*, 324 S.W.3d 896, 902 (Tex. App.–Houston [14th Dist.] 2010, pet. denied).

In conservatorship issues, the court's primary consideration always is the child's best interest. TEX. FAM. CODE ANN. § 153.002 (West 2014). In analyzing the best interest of a child, we use the *Holley* factors as a guide, which include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex.1976).

**The Evidence**

At trial, the evidence showed C.M.'s history with the Department and alleged physical and mental abuse of the children. The material time to consider is the present; evidence of past misconduct may not, by itself, be sufficient to show present parental unfitness as required to appoint a nonparent as conservator over a parent. *In re S.T.*, 508 S.W.3d 482, 492 (Tex. App.—

3

Fort Worth 2015, no pet.); *In re S.W.H.*, 72 S.W.3d 772, 778 (Tex. App.—Fort Worth 2002, no pet.). However, evidence of a parent's "blameworthy prior behavior," by itself, may be sufficient to overcome the presumption in some cases. *In re R.T.K.*, 324 S.W.3d at 902. In other words, "an adult's future conduct may be somewhat determined by recent past conduct." *In re L.D.F.*, 445 S.W.3d 823, 830 (Tex. App.—El Paso 2014, no pet.). More specifically, a court may not appoint a parent as a managing conservator if credible evidence is presented of a history or pattern of past or present child neglect, or physical abuse by one parent directed against the other parent, a spouse, or a child. *See* TEX. FAM. CODE ANN. § 153.004 (b) (West Supp. 2018); *In re K.S.*, 492 S.W.3d 419, 427 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

Here, the evidence showed that beginning in December 2014, the Department received six intakes involving C.M., H.H. (J.M.'s father), M.M., and J.M. The allegations included physical abuse of M.M. by C.M.; physical abuse and neglectful supervision of M.M. by C.M. and H.H.; physical abuse of J.M. by H.H.; neglectful supervision of M.M. by C.M. and H.H.; physical abuse and neglectful supervision of M.M and J.M. by C.M. and H.H.; and finally, physical neglect, medical neglect, and neglectful supervision of M.M. and J.M. by C.M. and H.H. One allegation, that H.H. slapped a two-year old, J.M., resulted in a criminal investigation. C.M. admitted that she allowed H.H. to remain in the house even after he had been charged with injury to a child and assault. She also admitted that M.M. was scared because she and H.H. fought, yelled, and screamed.

According to the counselors and the Department caseworker, C.M. did not believe she had much, if any, responsibility for the actions of H.H. towards herself or her children. Nor did she seem to be able to protect the children from exposing them to domestic violence. The Department investigator stated that C.M. appeared to put H.H. over her children and their safety, security, and wellbeing. H.M., C.M.'s mother, testified regarding three incidents before January 2016, in which she believed M.M. had been abused by C.M., including allegedly slamming his head in a mirror, punching him in the head, and choking him. This evidence of C.M.'s prior behavior, by itself, is sufficient to overcome the parental presumption in this case. *See In re R.T.K.*, 324 S.W.3d at 902. This likewise is credible evidence of a history or pattern of past or present child neglect, or physical abuse by one parent directed against the other parent or a child. *See* TEX. FAM. CODE ANN. § 153.004 (b); *In re K.S.*, 492 S.W.3d at 427.

4

Further, the Department must show direct evidence that placement of M.M. and J.M. with C.M. would significantly impair M.M.'s and J.M.'s physical health or emotional development or that allows the fact finder to reasonably reach that conclusion. *In re De La Pena*, 999 S.W.2d at 528. Acts or omissions that constitute significant impairment include, but are not limited to, physical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior by the parent. *In re S.T.*, 508 S.W.3d at 492. Other considerations may include parental irresponsibility, a history of mental disorders and suicidal thoughts, frequent moves, bad judgment, child abandonment, and an unstable, disorganized, and chaotic lifestyle that has put and will continue to put the child at risk. *Id.* The link between the parent's conduct and harm to the child may not be based on evidence that merely raises a surmise or speculation of possible harm. *Id.* at 492-93. We may also use the *Holley* factors as a guide. *See Holley*, 544 S.W.2d at 371-72.

The evidence at trial showed that the children came to live with H.M. after the children were removed from C.M. and H.H. in January 2016. H.M. described them as "horrible." J.M. had just turned three years old, could curse like an adult, and knew the context of those curse words. Both children had tempers and threw objects, kicked, screamed, hit, bit, and scratched. H.M. stated the children's environment with C.M. consisted of a lot of hollering, screaming, pushing, and cursing. H.M. placed the children in counseling and their behavior improved. However, after the children began regular visitations with C.M., their behavior steadily worsened. In February 2017, C.M. was awarded unsupervised visitation every other weekend, and the children's behavior again worsened. H.M. again began to see behaviors such as throwing items, not listening, and more back-talking.

On May 26, 2017, the trial court ordered a monitored return of the children to C.M. During this time, the children were "kicked out" of two day cares within a week of beginning each day care. The children's behaviors included J.M. punching another child in the mouth and threatening to kill the teacher with C.M.'s knife; M.M. refusing to mind; and J.M. hitting another child and the teacher. Then, C.M. lost her job and the children were unable to attend day care. Jennifer Parker, the Department's caseworker, stated that C.M. had problems with transportation and communication. C.M. also spanked M.M. even though the Department's rules did not allow corporal punishment. According to Parker, C.M. allowed men around the children even though they had not been approved by the Department, another violation of the rules. She also wanted a "taxi driver" to be allowed to pick up the children from school without prior approval, and

advertised for a babysitter for the children without prior approval. Jennifer Cumbie, the CASA advocate, stated that she visited C.M.'s house during the monitored return. She believed that C.M. displayed a high level of frustration and the house was in disarray. She was concerned that C.M. could not provide the children with a nurturing, loving, and stable home.

On October 23, 2017, an Department investigator testified that she received an intake regarding physical abuse of M.M. by C.M. The investigator stated that M.M. told her that C.M. hit him in the back with a plastic mixing spoon, leaving a clear, bruising mark above M.M.'s buttocks and showing the outline of the circular part of the spoon. C.M. denied the incident. The children were removed from C.M.'s house and returned to H.M.'s house. Parker stated that after the monitored return failed, M.M. said that C.M. yelled, screamed, and pushed him, while J.M. described C.M.'s house as "angry." M.M. told Parker that he was scared of, and did not feel safe with, C.M. and that her meltdowns were worse than his. When the children were returned to H.M. after the monitored return failed, H.M. said that certain behaviors were worse, i.e., throwing fits and tearing up the house when they got mad. The next to the last visitation with C.M. before trial, H.M. stated that it had been almost a month since C.M.'s last visitation. After that visit, she said that she "had a week of terror."

Two licensed professional counselors also testified. C.M.'s counselor testified that she saw small changes in C.M., but that her perspective of the case has not changed. She said that C.M.'s perspective actually deteriorated since 2016. The counselor has not seen C.M. shift from focusing and fighting the system to deciding to become a better parent and using all her resources to do so. C.M.'s focus appears to be her mother, H.M., and that the Department and her mother are not supportive. C.M. told her counselor that, at times, she felt overwhelmed by the children's behavior. According to the counselor, C.M. accepted some responsibility for the children's environment. The children's counselor testified that life had been tough for them and they exhibited anger, confusion, and anxiety. M.M. has trust issues and has been "emotionally bruised" from his experiences. Both children told the counselor that they could see themselves returning to live with C.M. "if she would change." However, M.M. did not believe that she would change. The children described C.M. as unpredictable and that there was no way to know what to expect from her.

According to C.M., M.M. was manipulative and wanted to live with H.M. because of her more lax rules. She also stated that he lied about being hit with the plastic mixing spoon. Regarding the unapproved men that she allowed contact with the children, she did not believe it was important

that they be approved or that their background was important unless they were on illegal drugs or had a domestic violence criminal history. Even though she knew that the second man had a criminal history, she still allowed him to be around the children without prior approval by the Department.

Parker stated that she had not seen a desire from C.M. to address the issues that led to the failed monitored return. She did not believe C.M. accepted the responsibility of being a parent or recognized how to protect the children from future abuse. Nor did she provide the children with safe, stable housing. Cumbie believed that returning the children to C.M. would be dangerous and harmful to the children's physical health and emotional development. She also believed that the children's emotional development had already been compromised. H.M. testified that she had not seen a change in C.M. throughout the case and stated that C.M. still does not admit that she has done anything wrong. H.M. said that M.M. still talked about C.M.'s anger and J.M. described C.M.'s house as angry.

## Conclusion

Because there was credible evidence of a history or pattern of past or present child neglect, or physical abuse by one parent directed against the other parent or a child, the trial court was not allowed to appoint C.M. as a managing conservator. *See* TEX. FAM. CODE ANN. § 153.004 (b); ***In re K.S.***, 492 S.W.3d at 427. Moreover, the evidence of C.M.'s prior behavior, by itself, is sufficient to overcome the parental presumption in this case. *See **In re R.T.K.***, 324 S.W.3d at 902.

After reviewing the record, the evidence shows that C.M. bore little responsibility for the reasons for the children being in the care of the Department; that she allowed H.H. to return to the house even after being charged with injury to a child and assault; that her house was chaotic and in disarray; that the children described her house as "angry" and that they were scared of her and did not feel safe with her; that their behavior deteriorated after any contact with her; and that she hit or spanked the children during the monitored return in violation of the Department's rules. Moreover, the trial court could have determined that C.M.'s focus was not on becoming a better parent; that she was not protective of the children, allowing them contact with men who had not been approved by the Department; and that she could not provide the children with a nurturing, loving, and stable home. From this evidence, the trial court could determine that separating the children from H.M. would significantly impair the children's emotional development and result in emotional harm. Accordingly, we conclude the trial court did not abuse its discretion by finding

that the appointment of C.M. as managing conservator was not in the children's best interest because it would significantly impair their physical health and emotional development. We overrule C.M.'s sole issue.

## DISPOSITION

Having overruled C.M.'s sole issue, we *affirm* the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered March 5, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 5, 2019**

**NO. 12-18-00243-CV**

**IN THE INTEREST OF M.M. AND J.M., CHILDREN**

Appeal from the County Court at Law No. 2
of Angelina County, Texas (Tr.Ct.No. CV-00023-16-01)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*