# NO. 12-12-00060-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST* | *§* | *APPEAL FROM THE* |
| *OF J.M.C.,* | *§* | *COUNTY COURT AT LAW* |
| *A CHILD* | *§* | *NACOGDOCHES COUNTY, TEXAS* |

## *OPINION*

Karen Green appeals the trial court's judgment denying her petition for Michael Connolly to pay child support for their adult son, Jeffrey. In three issues, Green contends that the trial court abused its discretion in denying her petition for adult child support. We affirm.

## BACKGROUND

Green and Connolly are the parents of one adult child, Jeffrey, born June 15, 1982. Jeffrey was born legally blind. Connolly and Green divorced in 1986.

### Nacogdoches, Texas (2001-2004)

In 2001, Jeffrey began working as a kennel assistant for his father, a veterinarian, at Connolly Animal Clinic, Inc. in Nacogdoches, Texas. Nicholas Green testified that while he was a student at Stephen F. Austin State University, he worked as a kennel assistant with Jeffrey. Nicholas stated that his and Jeffrey's responsibilities included feeding, watering, walking, bathing, and grooming the dogs in addition to keeping their environment clean. He also stated that Jeffrey's duties included holding the dogs for the veterinarian while they were being examined and taking the dogs out to their owners when it was time for them to go home.

Nicholas testified that Connolly expected the same work from Jeffrey that he did from him. He also testified that Jeffrey took pride in his work and performed the same duties as he did. According to Nicholas, Jeffrey normally finished his shift at the clinic around lunchtime,

and would then walk around Nacogdoches on his own with his seeing eye dog. For example, Nicholas explained, Jeffrey would go to McDonald's to get something to eat, walk to the bank and cash a check, and then go to Kroger's to buy groceries. He stated that Jeffrey also enjoyed walking his seeing eye dog and other dogs along Lannanna Creek. Nicholas testified that he and Jeffrey attended the same church, and that Jeffrey would frequently walk to services and other activities by himself. In fact, Nicholas explained, Jeffrey's life during these years revolved around his work with the dogs and his church.

Nicholas testified that he visited Jeffrey in his apartment about once a week. He described Jeffrey's apartment as always well kept, stating that Jeffrey was a "pretty clean guy." He stated that Jeffrey vacuumed his apartment, washed his own clothes, and kept his kitchen clean and his furnishings in order. Nicholas described Jeffrey's apartment as much cleaner than his own apartment or the apartments of most students at the university. He also testified that Jeffrey's day was very structured, that he was "always busy doing something," and that he "always had a plan of what he needed to do when he got out of work."

Diane Frink, a veterinarian technician and Jeffrey's supervisor at the clinic, described him as having a talent for dealing with animals, and rated his ability to work with them as "very good." She testified that Connolly expected as much work from Jeffrey as from the other employees at the clinic. She further testified that all of the customers loved Jeffrey.

Connolly testified that during these years, Jeffrey was happy with his job at the clinic, his church, and various local activities. He stated that Jeffrey had lots of friends in Nacogdoches, both from church and the clinic. He believed that Jeffrey's orientation and mobility training was one of the things that helped Jeffrey the most with his ability to traverse Nacogdoches independently and his mobility. Connolly testified that Jeffrey had enough money to take care of his expenses and essential needs. In fact, Connolly explained that, when Jeffrey left Nacogdoches at the end of 2004, he had approximately $1,175.00 in his checking account and approximately $700.00 in his savings account. He stated that he paid Jeffrey $7.50 an hour as a kennel assistant at the clinic. In addition to his pay, Jeffrey received Supplemental Security Disability Income (SSDI).

Connolly also testified that Jeffrey lived in an apartment behind the clinic and that he normally stopped by Jeffrey's apartment twice a week. He would point out actions that Jeffrey needed to take in order to keep his apartment clean and that he may have missed because of his

limited eyesight.  He also balanced Jeffrey's checkbook once a month.  Further, he testified that he usually picked up Jeffrey when he finished grocery shopping because he was unable to carry the groceries back to his apartment.

In late 2004, Green's father (Jeffrey's maternal grandfather) informed Jeffrey that he would no longer talk to him unless he moved to Illinois.  According to Nicholas, Jeffrey was "very unhappy" about this ultimatum. However, Jeffrey made the move to Bloomington, Illinois.

## Bloomington, Illinois (2005-present)

Green testified that in Bloomington, Jeffrey was placed with the Occupational Development Center (ODC), operated by the Illinois Department of Human Services—Office of Rehabilitation Services.  She stated that the ODC had a job placement program and assisted Jeffrey in gaining employment.  Green testified that Jeffrey wanted to work in the kennels of an animal clinic, and they applied at every kennel or small animal clinic in Bloomington. However, no one would hire him.  She stated that eventually, after two years, Jeffrey gave up on doing the work he loved, and began working at Kroger's sacking groceries and moving carts.

Green testified that Jeffrey works from eleven to sixteen hours a week at Kroger's.  She described Jeffrey's job with Kroger's as a charitable one, and estimated that he probably produced about half as much as someone without a disability. Green stated that Jeffrey's job is about two and one-half hours from where he lives, and that he travels to work by a special services bus.  She testified that even though there is a public bus route near where Jeffrey lives, he is able to use it only in periods of good weather.  She stated that she must transport Jeffrey to many of the places he needs to go in Bloomington.

Green testified that she helps Jeffrey clean his house, pay his bills, and handle his checkbook. She also assists him with health decisions and needs. She stated that Jeffrey receives SSDI. Green testified that Jeffrey's lowered income level in Bloomington, including his SSDI, necessitated having Connolly pay adult child support.

## Jeffrey's Capabilities

Barbara Cherry, an orientation and mobility specialist for the visually impaired and blind, began working with Jeffrey when he was six months old.  She was Jeffrey's case worker for five years, and has periodically worked with him since that time on orientation and mobility issues. She described Jeffrey as a very motivated, enthusiastic individual who is willing to learn as much as he can.  Cherry testified that Jeffrey could "do really well" working at any small animal clinic

because that is his passion. She stated that Jeffrey has shown he is capable of taking care of himself and being gainfully employed although he would always need some extra help with various life activities.

Ann Anderson, a retired professor, operates St. Francis Dog Rescue of Nacogdoches. She stated that part of its mission is to rescue and rehabilitate abandoned animals and prepare them for adoption. According to Anderson, many of the dogs have been abused or abandoned and thus have physical and psychological problems. She testified that someone rehabilitating these dogs must have sensitivity to the animal, an ability to adjust to any training procedure to suit the particular animal, and a calm demeanor so that the dog perceives stability. She stated that Jeffrey has all of these qualities.

Anderson testified that, when he visits his father, Jeffrey volunteers at St. Francis. She stated that Jeffrey has a special talent in dealing with abused dogs and rehabilitating them. She described one dog Jeffrey had completely rehabilitated. She stated that the dog had been seized from a puppy mill, was in poor health, severely stressed, and, as shown by pictures introduced into evidence, had all the characteristics of an abused animal. According to Anderson, after a week of working with Jeffrey, the pictures showed the dog engaged with Jeffrey, and both of them looking very strong and confident. Anderson testified that she could offer Jeffrey a part-time position immediately. She also stated that after a probation period, she would employ him full time at ten dollars an hour.

## Procedural Background

Following the trial, the trial court denied Green's petition for Connolly to pay adult child support for Jeffrey. In addition, the trial court made findings of fact and conclusions of law. Three specific findings of fact are as follows:

3.   Jeffrey does not require substantial care because of any mental or physical disability.

4.   Jeffrey is in need of personal supervision only on a very limited basis, such as supervision with respect to balancing his checkbook, inspecting and assisting with house cleaning, and generally visiting him in his home periodically.

5.   Jeffrey is capable of self-support.

Green appealed.

4

## ISSUES PRESENTED

In her first issue, Green contends that the trial court failed to properly construe and apply the Texas Family Code. In her second issue, she argues alternatively that the case should be remanded in the interest of justice for a "new decisional analysis." Finally, in her third issue, Green argues that Jeffrey's eligibility for adult child support was proven as a matter of law, and that the findings of fact, specifically findings of fact three, four and five, are against the great weight of the evidence before the court.

## STANDARD OF REVIEW

A court's order on a child support issue will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *see also* **In re J.D.D.,** 242 S.W.3d 916, 919 (Tex. App.—Dallas 2008, pet. denied) (trial court has broad discretion on child support issues). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner or when it acts without reference to any guiding rules or principles. **In re J.D.D.**, 242 S.W.3d at 920 (citing **Downer v. Aquamarine Operators, Inc.**, 701 S.W.2d 238, 241-42 (Tex. 1985)).

In family law cases, legal and factual insufficiency are not independent grounds of error but are relevant factors of our assessment of whether the trial court abused its discretion. **Watson v. Watson**, 286 S.W.3d 519, 522 (Tex. App.—Fort Worth 2009, no pet.). To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two prong inquiry: (1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion? *Id*. at 522-23. The traditional sufficiency inquiry applies to the first question. **Knight v. Knight**, 131 S.W.3d 535, 539 (Tex. App—El Paso 2004, no pet.). Once we have determined whether sufficient evidence exists, we must then decide whether the trial court made a reasonable decision. *Id*. In other words, we must conclude that the ruling was neither arbitrary nor unreasonable. *Id*. In the absence of such a clear abuse of discretion, an appellate court should not substitute its judgment for that of the trial court**. In re M.L.W.**, 358 S.W.3d 772, 774 (Tex. App.—Texarkana 2012, no pet.); *see also* **City of Keller v. Wilson**, 168 S.W.3d 802, 822 (Tex. 2005) ("A reviewing court cannot substitute its judgment for the trier-of-fact, so long as the evidence falls within [the] zone of reasonable disagreement.")

5

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When the appellate record contains a reporter's record as it does in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Fulgham*, 349 S.W.3d at 157. We review a trial court's conclusions of law de novo. *Quick v. Plastic Solutions of Tex., Inc.,* 270 S.W.3d 173, 181 (Tex. App.—El Paso 2008, no pet.). Erroneous conclusions of law are not binding on the appellate court, but if the controlling findings of fact will support a correct legal theory, are supported by the evidence, and are sufficient to support the judgment, then the adoption of erroneous legal conclusions will not mandate reversal. *Id*.

## APPLICABLE LAW

Pursuant to Section 154.302 of the Texas Family Code, the Texas Legislature has determined the circumstances and conditions under which child support may be ordered for a disabled child after the child has reached the age of eighteen. Section 154.302 states as follows:

(a) The court may order either or both parents to provide for the support of a child for an indefinite period and may determine the rights and duties of the parents if the court finds that:

(1) the child, whether institutionalized or not, requires substantial care and personal supervision because of a mental or physical disability and will not be capable of self-support; and

(2) the disability exists, or the cause of the disability is known to exist, on or before the 18th birthday of the child.

(b) A court that orders support under this section shall designate a parent of the child or another person having physical custody or guardianship of the child under a court order to receive the support for the child. The court may designate a child who is 18 years of age or older to receive the support directly.

TEX. FAM. CODE ANN. § 154.302 (West 2008).

## STATUTORY CONSTRUCTION

Statutory construction is a question of law and is reviewed de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). In construing a statute, our primary objective is to determine and give effect to the legislature's intent in enacting

it. ***McIntyre v. Ramirez***, 109 S.W.3d 741, 745 (Tex. 2003). In determining legislative intent, we examine the entire act, not just isolated portions of it. ***City of San Antonio v. City of Boerne***, 111 S.W.3d 22, 25 (Tex. 2003). We start with the plain and common meaning of the statute's words. ***McIntyre***, 109 S.W.3d at 745. Unless the meaning of the statute's language is ambiguous, we determine the legislature's intent from the language of the statute itself. *See* ***Fitzgerald v. Advanced Spine Fixation Sys., Inc.***, 996 S.W.2d 864, 865 (Tex. 1999). "Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on." ***Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson***, 209 S.W.3d 644, 651 (Tex. 2006).

We must presume that every word of the statute has been used for a purpose, and that every word excluded from the statute has also been excluded for a purpose. ***Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer***, 904 S.W.2d 656, 659 (Tex. 1995). We should not insert words into a statute except to give effect to clear legislative intent. ***Id***. "Statutory language should not be read as pointless if it is reasonably susceptible of another construction." ***Franka v. Velasquez***, 332 S.W.3d 367, 393 (Tex. 2011) (Medina, J., dissenting) (citing ***City of LaPorte v. Barfield***, 898 S.W.2d 288, 292 (Tex. 1995), *superseded by statute on other grounds,* ***Travis Cent. Appraisal Dist. v. Norman***, 342 S.W.3d 54, 54-55 (Tex. 2011)). We also presume that the legislature enacted the statute with complete knowledge of existing law and with reference to it. ***Acker v. Tex. Water Comm'n***, 790 S.W.2d 299, 301 (Tex. 1990). It is further presumed that the legislature enacts a statute with the intention of complying with the Texas and United States constitutions. TEX. GOV'T CODE ANN. § 311.021(1) (West 2005). We also may consider the object sought to be obtained by the statute, and the consequences of a particular construction. ***Id***. § 311.023(1), (5).

"Substantial" is defined in part as "ample" or "sustaining." THE AMERICAN HERITAGE COLLEGE DICTIONARY 1354 (3d ed. 1993). "Capable" is defined in part as "[h]aving the ability required for a specific task or accomplishment" or "[h]aving the inclination or disposition." ***Id***. at 207. "Support" is defined in part as "to provide for or maintain by supplying with money or necessities." ***Id***. at 1364.

## APPLICATION OF LAW TO FACTS

In her third issue, Green specifically attacks findings of fact three, four, and five in which the trial court determined Jeffrey's eligibility for adult child support pursuant to the Texas Family Code. She contends the evidence establishes the opposite of the trial court's findings of fact and alternatively, the findings are against the great weight of the evidence.

Green might be correct in her contentions if the trial court had looked only at the years since Jeffrey has been living in Bloomington. But the trial court was required to consider all of the evidence of Jeffrey's circumstances following his eighteenth birthday. Circumstances may exist after a disabled child turns eighteen that could entirely relieve a parent of the duty to pay adult child support. *See* **Valaque v. Valaque**, 574 S.W.2d 608, 610, (Tex. Civ. App.—San Antonio 1978, no writ). The circumstances in which Jeffrey lived from 2001 through 2004 in Nacogdoches show his ability to overcome the physical disability resulting from his limited eyesight. The evidence shows that with his seeing eye dog, Jeffrey was able to go wherever he wanted, whenever he wanted, including to the grocery store, out to eat, to the bank, to recreational activities, and to church. Thus, the evidence showed that Jeffrey was mobile and could traverse Nacogdoches on his own.

Further, the evidence showed that Jeffrey did not need substantial care or personal supervision in his daily activities. He lived in his apartment by himself, prepared his own meals, and kept his apartment clean, especially when compared to other university students. His father visited him twice a week to point out areas that he needed to clean in his apartment, to assist him in balancing his checkbook, and to help him transport his groceries. However, Connolly's personal supervision was comparatively limited. Further, the trial court's finding that Jeffrey was capable of self-support is shown by the fact that he lived on his income from the clinic and SSDI from 2001 to 2004. His ability to more than provide for his needs and necessities was emphasized by the fact that he had over $1,800.00 in his checking and savings accounts when he left Nacogdoches at the end of 2004.

The evidence also shows that Jeffrey thrived when he was working with the dogs at the clinic and that he continued to thrive after 2004 when he worked with dogs during his visits to Nacogdoches for short periods of time. Green testified that she and ODC tried to find a similar job for him in the Bloomington area, but were unable to do so. Jeffrey's love and talent for

8

working with dogs allowed him to be independent and, thus, not require substantial care or personal supervision. Such a job also allowed Jeffrey to support himself financially.

Based on our review of the record, we disagree that Green proved Jeffrey's eligibility for adult child support as a matter of law. Because the trial court properly considered all of the evidence of Jeffrey's circumstances after his eighteenth birthday, and the evidence demonstrated that Jeffrey did not require substantial care and personal supervision and was capable of self-support, findings of fact three, four, and five are not so against the great weight and preponderance of the evidence as to be clearly unjust. *See Ortiz*, 917 S.W.2d at 772. According, the trial court did not abuse its discretion in making findings of fact three, four, and five. Green's third issue is overruled.

In her first issue, Green contends that the trial court misconstrued Section 154.302 of the Texas Family Code, and failed to apply it correctly to the facts of this case. Specifically, Green contends that the trial court erred in entering conclusions of law two and four as follows:

2. The Court, based on the Findings of Fact, does not have authority to order either parent to provide for the support of Jeffrey, an adult child.

4. The Court concludes that support for Jeffrey should not be awarded. Petitioner has not satisfied the requirements of the Texas Family Code that authorize the awarding of support for an adult child.

We note that the trial court conditioned these conclusions of law on the findings of fact it had already made. As we have shown above, there is sufficient evidence to support the trial court's findings of fact that Jeffrey did not require substantial care or substantial personal supervision, and was capable of self-support while he lived in Nacogdoches. As such, the trial court's findings of fact three, four, and five are supported by the evidence and are sufficient to support the judgment. *See Quick*, 270 S.W.3d at 181.

In her brief, Green maintains that the trial court should have focused only on the years Jeffrey lived in Bloomington in order to determine whether Jeffrey was eligible for adult child support. However, the trial court did not abuse its discretion in considering all of Jeffrey's circumstances following his eighteenth birthday, including the years he lived in Nacogdoches and his capabilities when he was working with dogs. Because findings of fact three, four, and five support the trial court's conclusions of law two and four, the trial court did not err in reaching the challenged conclusions of law. We therefore overrule Green's first issue.

In her second issue, Green argues alternatively that the case should be remanded in the interest of justice because the record is "hopelessly unclear about the [trial] court's construction and application of the law." We disagree with Green's characterization of the record. Moreover, we have already determined that the trial court properly construed and applied the Texas Family Code, and that the challenged findings of fact are supported by the evidence, are sufficient to support the judgment, and are not against the great weight of the evidence. Therefore, we need not address this issue. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

We have overruled Green's first and third issues and concluded that we need not address her second issue. Accordingly, we ***affirm*** the judgment of the trial court.


JAMES T. WORTHEN
Chief Justice


Opinion delivered February 21, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 21, 2013**

**NO. 12-12-00060-CV**

**IN THE INTEREST OF J.M.C., A CHILD**

Appeal from the County Court at Law

of Nacogdoches County, Texas. (Tr.Ct.No. 11,120-95-3)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **KAREN GREEN**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*