

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-22-00361-CV

**IN THE INTEREST OF M.I.M.** and A.J.M., Children

From the 38th Judicial District Court, Uvalde County, Texas
Trial Court No. 2013-04-29187-CV
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Luz Elena D. Chapa, Justice
Beth Watkins, Justice
Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: November 15, 2023

AFFIRMED

Appellant Layla Martinez appeals the trial court's March 29, 2022 order finding appellee

Roger Ruiz had fully paid his child support obligations including interest. Martinez argues (1) the

evidence was insufficient to establish certain mortgage payments were support for the children and

(2) the trial court erred by concluding Ruiz was entitled to a credit for disability payments made

to the children. We affirm.

### BACKGROUND

Layla Martinez and Roger Ruiz were married in 2006 and divorced in 2013. The divorce

decree required Ruiz to pay $1,872 per month in child support. In May 2019, Ruiz filed a petition

---

[1] The Honorable Sandee Bryan Marion, Chief Justice (Retired) of the Fourth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.

to modify the parent-child relationship requesting, among other things, a termination of the parent-child relationship between him and one of the two children—A.J.M.—because he was misled about his child parentage. He also sought a confirmation he owed zero past due child support. The Attorney General of Texas countered by filing a suit for modification of support and motion to confirm support arrearages (the "motion"). The motion provided Ruiz failed to pay court-ordered child support and the total arrearages, including interest, was $131,726.20. The motion requested the trial court confirm and enter judgment for the arrearages, order payment and income withholding to liquidate the judgment, and modify the divorce decree accordingly.

In September 2019, the parties entered an agreed order by which the trial court terminated the parent-child relationship between Ruiz and both children involved. In January 2022, the trial court held a final hearing on child support during which evidence was presented and both parents testified. At the hearing's conclusion, the trial court concluded Ruiz had "fully paid off his child support obligation including interest," and "zero arrearage exists." The trial court held Ruiz complied with his child support obligations by, among other things, making direct payments to Martinez by bank transfer and through Ruiz's Social Security disability payments to the children.

This appeal followed.

## CHILD SUPPORT

Martinez argues the trial court erred when it credited Ruiz for certain payments. Specifically, she contends: (1) the evidence was legally and factually insufficient to establish monthly mortgage payments Ruiz made to her for a home they jointly owned constituted support for his children, and (2) the trial court erred by crediting Ruiz's disability payments paid to the children against his child support obligation.

**A. Standard of Review**

We review the trial court's child support award for abuse of discretion. *See Ochsner v. Ochsner*, 517 S.W.3d 717, 729 (Tex. 2016). "Under the abuse-of-discretion standard, sufficiency of the evidence is not an independent ground of error, but is a factor in assessing whether the trial court abused its discretion." *In re A.L.S.*, 338 S.W.3d 59, 65 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). "First, we consider whether the trial court had sufficient evidence upon which to exercise its discretion." *In re N.V.R.*, 580 S.W.3d 220, 225 (Tex. App.—Tyler 2019, pet. denied) (mem. op.). A legal sufficiency challenge may be sustained only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Id.* at 827.

"For factual sufficiency, we consider all the evidence for and against the challenged finding and set the finding aside 'only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.'" *See, e.g.*, *Haden v. Granmayeh*, No. 01-19-01013-CV, 2020 WL 7391708, at *2 (Tex. App.—Houston [1st Dist.] Dec. 17, 2020, no pet.) (mem. op.) (quoting *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam)). When the evidence conflicts, we must presume the factfinder resolved any inconsistencies in favor of the order if a reasonable person could do so. *City of Keller*, 168 S.W.3d at 821.

Next, we "determine whether, based on the evidence, the trial court erred in its exercise of that discretion." *N.V.R.*, 580 S.W.3d at 225. "A trial court abuses its discretion when it acts without reference to any guiding rules or principles, or when it fails to analyze or apply the law correctly." *A.L.S.*, 338 S.W.3d at 65.

"We review the trial court's legal conclusions de novo." *In re R.R.*, No. 02-15-00032-CV, 2017 WL 632897, at *4 (Tex. App.—Fort Worth Feb. 16, 2017, pet. denied) (mem. op.). "We may review conclusions of law to determine their correctness based on the facts, but we will not reverse because of an erroneous conclusion if the trial court nonetheless rendered the proper judgment," i.e., when the controlling findings of fact support the judgment on some correct legal theory. *Id.*

"When, as here, the trial court does not file findings of fact and conclusions of law, we imply that the trial court made all findings necessary to support the judgment and will uphold those findings if supported by sufficient evidence." *A.L.S.*, 338 S.W.3d at 65. Furthermore, because the trial court acts as the factfinder in bench trials, we must defer to its credibility determinations and may not impose our own opinion contrary to those determinations, and we may not substitute our judgment for that of the trial court. *Id.* at 66.

### B. Law

"Section 157.263 of the Family Code provides for confirmation of child support arrearages when a party moves to enforce the payment of child support." *Haden*, 2020 WL 7391708, at *2–3. If a child support enforcement motion requests a money judgment for child support arrearages, the trial court shall confirm the arrearages amount and render a cumulative money judgment.[2] TEX. FAM. CODE § 157.263(a); *Ochsner*, 517 S.W.3d at 720 (same, citing TEX. FAM. CODE § 157.263);

---

[2] One cumulative money judgment for child support owed includes "(1) unpaid child support not previously confirmed; (2) the balance owed on previously confirmed child support arrearages or lump sum or retroactive child support judgments; (3) interest on the child support arrearages; and (4) a statement that it is a cumulative judgment for the amount of child support owed." TEX. FAM. CODE § 157.263(b); *Ochsner*, 517 S.W.3d at 721 (same).

*N.V.R.*, 580 S.W.3d at 225 ("A trial court is required to follow particular procedures in entering a final judgment in a proceeding seeking child support arrearages. First, the trial court must tally the amount of the arrearage based on the payment evidence presented." (citation omitted)).

"[I]n a proceeding to confirm child-support arrearages, the trial court's child-support calculations must be based on the payment evidence presented, not the trial court's assessment of what is fair or reasonable." *A.L.S.*, 338 S.W.3d at 66. Although the trial "court may not reduce or modify the amount of arrearages . . . in confirming the amount of arrearages, [it] may allow a counterclaim or offset as provided by this title." TEX. FAM. CODE § 157.263(b-3); *e.g.*, *Ochsner*, 517 S.W.3d at 719, 724 (same); *see N.V.R.*, 580 S.W.3d at 225 ("After this calculation is made, the final judgment is to be rendered only after considering offsets and counterclaims.").

The trial court has discretion to consider a range of child support payment evidence. *Ochsner*, 517 S.W.3d at 722–23, 728 (concluding trial court empowered, in a child-support enforcement action, to "consider the various payments made by the obligor, regardless of what precise manner an earlier court . . . specified in the child-support order," expressly rejecting dissent's "apparent[] belie[f]" that "direct payment of child support can never count as a payment under the decree if the decree specifies payments to the registry," but further providing parties should not be encouraged to bypass registry payments for direct payments). For example, a trial court may consider evidence of "direct payments that discharge the obligee's own obligation to provide the funds." *Id.* at 722. "Nothing in the statute suggests that the trial court can consider only payments made through the registry in determining the amount of child support that an obligor has paid, and thus the amount for which the obligor is in arrears" *Id.* at 722, 727 ("Neither law nor logic limits the trial court to the registry record."). In other words, "the trial court may consider [payment evidence] and decide whether—and how much of—the obligation has been discharged,"

and then determine whether "the obligor has satisfied his duty" or "payments did not contribute to the satisfaction of the obligor's child-support obligation." *Id.* at 724.

### C. Crediting Monthly Mortgage Payments as Child Support

Turning to the first part of our inquiry—determining whether the trial court had sufficient information to exercise its discretion in finding no child support arrearages—Martinez contends the evidence was legally and factually insufficient to establish Ruiz's monthly mortgage payments constituted payments toward his child support obligation.

During the hearing, Ruiz testified he and Martinez purchased a home in Uvalde in February 2014, and he lived in the house from February to September 2014 with Martinez and the children. Copies of Martinez and Ruiz's bank account records, as well as a summary of transfers from Ruiz's account to Martinez's account, were admitted into evidence without objection. Ruiz testified the summary accurately reflected monthly transfers he made to Martinez's account from November 2013 to April 2019, and noted the summary calculated the total amount transferred as $40,774. Ruiz testified that amount of $40,774 was child support payments. Ruiz further testified the divorce decree admonished him not to make direct payments, but to make them to the Child Support State Disbursement Unit in San Antonio, Texas. He testified he and Martinez mutually and verbally agreed to "[e]verything" he did that deviated from the decree. On cross-examination, he conceded he testified during an earlier deposition he had been making the mortgage payment, borrowed money for the mortgage, and signed a deed of trust for the home. However, he reiterated the mortgage payment, which he considered included in the $40,774, was child support to which he and Martinez agreed. He further testified once he and Martinez moved from the Uvalde house, they rented it, and Martinez kept the rental income.

Martinez testified she and Ruiz lived in the Uvalde house from February to December 2014. She further testified Ruiz was transferring money to her for his half of the mortgage, but he

did not pay child support. Martinez further testified the total amount in the financial activity report provided by the Attorney General's Office—$139,010.03—was Ruiz's child support arrearages. On cross-examination, Martinez read her deposition transcript into the record. During the deposition, she was asked if she and Ruiz had ever discussed whether the money provided by Ruiz was for the mortgage or for child support, and Martinez responded "[t]here were no conversations on what the money was for" because she "believe[d] it was all kind of blended together just like a general obligation that [Ruiz] owed" her. During cross-examination, she also testified the money Ruiz provided "benefitted the children." She also agreed the money Ruiz provided for child support or a generalized obligation directly benefited the children because the mortgage being paid freed up her income and allowed her to provide the children with more support. Martinez also testified she and Ruiz agreed he was to reimburse her for the mortgage payment, and Ruiz's payments were for "living in the home." She further testified he benefited from her paying the mortgage because it did not have a negative impact on his credit history. She thought the divorce decree's admonishment that Ruiz should not make direct child support payments to her was fair notice to him to remain in compliance with his child support obligation, and he was required to make the payments through the Child Support State Disbursement Unit.

Viewing all the evidence in a light favorable to the trial court's finding, we cannot conclude the evidence is legally insufficient to support the trial court's finding Ruiz was entitled to a child support credit for the mortgage payments he transferred to Martinez. After considering all the evidence for and against the trial court's determination, we cannot say the trial court's finding is so weak as to make the finding clearly wrong and manifestly unjust. *See Haden*, 2020 WL 7391708, at *2. We therefore cannot say the trial court behaved arbitrarily, unreasonably, or without reference to guiding rules or principles by crediting Ruiz's mortgage payments to Martinez as child support. *See A.L.S.*, 338 S.W.3d at 66 (concluding because trial court acts as factfinder in

bench trials, appellate court must defer to trial court's credibility determinations and may not impose its own opinion contrary to those determinations or substitute its judgment for trial court).

### D. Crediting Disability Payments as Child Support

Turning to Martinez's second point of error, she argues the trial court erred by crediting Ruiz's Social Security disability payments paid to her (for the benefit of the children) against Ruiz's child support arrearages. Specifically, she contends only lump-sum payments, not monthly or periodic payments, may be credited against arrearages under Texas Family Code section 154.132. Ruiz contends *Rich* supports the trial court's decision to credit his monthly disability payments against his child support arrearages.

#### 1. Statutory Construction

Because the parties dispute how Texas Family Code section 154.132 applies, we must construe the statute's meaning. We construe statutes to ascertain and give effect to the Legislature's intent. *In re A.E.*, No. 09-16-00019-CV, 2017 WL 1535101, at *5 (Tex. App.—Beaumont Apr. 27, 2017, pet. denied) (mem. op.). "In determining legislative intent, we examine the entire act, not just isolated portions of it." *In re J.M.C.*, 395 S.W.3d 839, 845 (Tex. App.—Tyler 2013, no pet.) (citing *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). "We start with the plain and common meaning of the statute's words." *Id.* (citing *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003)). "Where text is clear, text is determinative," *Ochsner*, 517 S.W.3d at 720, unless a different meaning is supplied or is apparent from the context, or the plain meaning of the words leads to absurd results, *see Cadena Com. USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017); *A.E.*, 2017 WL 1535101, at *5. Words and phrases are read in context and construed according to grammar rules and common usage. TEX. GOV'T CODE § 311.011(a). We "presume the Legislature 'chooses a statute's language with care, including each word for a purpose, while purposefully omitting words not chosen.'" *See Cadena*,

518 S.W.3d at 325–26 (quoting *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)). And "[w]e also presume that the legislature enacted the statute with complete knowledge of existing law and with reference to it." *J.M.C.*, 395 S.W.3d at 845.

### 2. Analysis

In 1999, the Legislature added section 154.132 because prior to that time "the Texas Family Code did not provide for any offsets or credits to child-support obligations based on a parent's social security disability income." *In re R.D.E.*, 627 S.W.3d 798, 802 (Tex. App.—Corpus Christi-Edinburg 2021, pet. denied). Texas Family Code section 154.132 provides:

> (a) In applying the child support guidelines for an obligor who has a disability and who is required to pay support for a child who receives periodic benefits as a result of the obligor's disability, the court shall apply the guidelines by determining the amount of child support that would be ordered under the child support guidelines and subtracting from that total the amount of benefits or the value of the benefits paid to or for the child as a result of the obligor's disability.
>
> (b) If a child for whom the obligor owes child support receives a lump-sum payment as a result of the obligor's disability and that payment is made to the obligee as the representative payee of the child, the credit for the lump-sum payment must be applied as provided by Section 157.009.

TEX. FAM. CODE § 154.132. Subsection (a) addresses periodic disability payments. Subsection (b) addresses lump-sum payments and states such payments are credited pursuant to section 157.009, which provides:

> In addition to any other credit or offset available to an obligor under this title, if a child for whom the obligor owes child support receives a lump-sum payment as a result of the obligor's disability and that payment is made to the obligee as the representative payee of the child, the obligor is entitled to a credit. The credit under this section is equal to the amount of the lump-sum payment and shall be applied only to any child support arrearage and interest owed by the obligor on behalf of that child at the time the payment is made.

TEX. FAM. CODE § 157.009. In plain terms, subsection (b) provides obligors are entitled to a lump-sum payment credit equal to the lump-sum payment and applied only to any child support arrearage and interest owed when the payment is made.[3]

Unlike subsection (b), subsection (a) of section 154.132 is not subject to section 157.009's limiting language. *See Cadena*, 518 S.W.3d at 325–26. It plainly states when calculating child support ordered under the guidelines, periodic disability payments are "subtract[ed] from that total the amount of benefits or the value of the benefits paid to or for the child." TEX. FAM. CODE § 154.132(a). However, section 157.009's limiting language provides important context for subsection (a): section 157.009's reference to applying lump-sum payments to child support arrearages establishes section 154.132 is applied in enforcement proceedings to confirm child support arrearages. *See Cadena*, 518 S.W.3d at 325; *see, e.g.*, *Sheppard v. Shellman*, No. 03-21-00116-CV, 2021 WL 5814295, at *3 (Tex. App.—Austin Dec. 8, 2021, no pet.) (mem. op.) (concluding trial court, in confirmation of arrearages, correctly applied section 154.132 and found child receiving disability benefits that exceeded child support obligation and therefore set obligation at $0 per month); *In re D.T.S.*, No. 05-12-00110-CV, 2013 WL 4082302, at *2 (Tex. App.—Dallas Aug. 13, 2013, no pet.) (mem. op.) (concluding trial court, in enforcement proceeding, failed to apply section 154.132 by failing to subtract the amount in disability benefits paid to the child from child support amount).

---

[3] In *In re R.D.E.*, the Thirteenth Court of Appeals explained the limitations in section 157.009 did not restrict the application of any remaining lump-sum payments to then-existing arrearages. 627 S.W.3d at 802-03 (concluding section 154.132 plainly provides it "applies to all 'benefits paid to or for the child as a result of the obligor's disability'" and further reasoning "the Texas Family Code specifically provides for the consideration of social security disability payments when confirming arrearages"). The court held lump-sum payments were applicable to future child support payments. *Id.* On September 1, 2023, section 157.009 was amended to bar crediting lump-sum payments against future child support obligation: "The credit under this section may not be used to reduce the amount of a periodic child support obligation ordered under Chapter 154 that has not yet accrued." *Id.*

Accordingly, subsection(a) does not bar periodic disability payments from being subtracted from child support arrearages as a credit or an offset. *See R.D.E.*, 627 S.W.3d at 801, 803 (providing section 154.132 "applies with equal force to the modification of child support under chapter 156" "in confirming arrearages of child support" (quoting § 154.132(a)); *Sheppard*, 2021 WL 5814295, at \*3; *D.T.S.*, 2013 WL 4082302, at \*2; *see also* TEX. FAM. CODE § 157.263(b-3) ("In rendering a money judgment under this title that includes child support . . . arrearages, the court may not reduce or modify the amount of arrearages but, in confirming the amount of arrearages, may allow a counterclaim or offset as provided by this title."); *Ochsner*, 517 S.W.3d at 723 ("An analysis of the pertinent parts of the Family Code, then, leads to the conclusion that in a child-support enforcement action, a trial court may consider the various payments made by the obligor, regardless of what precise manner an earlier court—presiding over a distinct proceeding—specified in the child-support order."); *Rich*, 993 S.W.2d at 275 (Tex. App.—San Antonio 1999, no pet.) (concluding, in enforcement proceeding for arrearages, appellant entitled to credit for monthly social security disability payments paid to children). We therefore cannot conclude the trial court erred by crediting the monthly Social Security disability payments made to Martinez for the children to any existing child support arrearages.[4]

Accordingly, we hold the trial court did not abuse its discretion.[5]

---

[4] Martinez further contends this court must follow the First Court of Appeals' decision in *Attorney General of Texas v. Stevens*, which held the Family Code specifies the only type of affirmative defenses which can be applied as a credit to child support arrearages. 84 S.W.3d 720 (Tex. App.—Houston [1st Dist.] 2002, no pet.). However, *Stevens* addresses the application of a repealed statute. *See Stevens*, 84 S.W.3d at 723 (addressing meaning of "subchapter" in Section 157.262(b)); *see also* Acts 2011, 82nd Leg., ch. 508 (H.B. 1674), § 24, 2011 Tex. Sess. Law Serv. Ch. 508 (H.B. 1674). And, as Martinez concedes, *Stevens* explicitly rejected *Rich, id.* at 724–25, which is binding precedent on this court. *See Rich*, 993 S.W.2d at 275 (Tex. App.—San Antonio 1999, no pet.) (concluding, in enforcement proceeding for arrearages, appellant entitled to credit for monthly social security disability payments paid to children).

[5] Martinez also requests this court order the trial court to assess costs and attorney's fees against Mr. Ruiz. The trial court ordered attorney's fees "to be borne by the party who incurred them." Because we do not conclude the trial court erred, we cannot conclude the trial court abused its discretion in ordering the parties to bear their own attorney's fees. *See In re C.C.E.*, No. 04-20-00416-CV, 2021 WL 3173913, at \*6 (Tex. App.—San Antonio July 28, 2021, no pet.)

## CONCLUSION

We affirm the trial court's order.

Luz Elena D. Chapa, Justice

---

(mem. op.) ("Because the trial court did not abuse its discretion by finding Mother was in arrears on her child support obligation, it also did not abuse its discretion by awarding attorney's fees to Father."); *R.R.*, 2017 WL 632897, at *3.