# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-24-00263-CV

---

**Nomeli Nunez, Appellant**

**v.**

**Kathleen Diane Nichols, Appellee**

---

**FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-FM-07-004551, THE HONORABLE JAN SOIFER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Nomeli Nunez appeals the Order for Support of Disabled Child modifying his obligation to pay Kathleen Diane Nichols support for their adult child, O.F.N. (Daughter). He contends that the trial court abused its discretion or erred by finding that Daughter requires financial support and insurance and ordering that he pay Nichols for child support, insurance for Daughter, and attorney's fees. He also argues that the record contained no or insufficient evidence for those purposes. We will affirm the support award in all aspects but reverse the award of attorney's fees and remand for further proceedings on that issue.

### TRIAL-COURT FINDINGS

Daughter was born to Nunez and Nichols in 2000. The parents divorced in 2008, and Daughter has primarily lived with her mother, Nichols, since then. Nichols has a master's degree in nursing and is a registered nurse but has not worked full-time since September 2013.

She was diagnosed with multiple sclerosis in 2013 and receives full disability benefits of $1,256 per month.

In April 2024, the trial court found and concluded that Daughter requires substantial care and personal supervision because of a mental or physical disability and is not capable of self-support. The court found that the disability existed before Daughter's eighteenth birthday and continues to exist. The court found that Nunez had $7,619.33 in monthly net resources and obligated him to pay $1,226.49 in monthly child support starting April 1, 2024. The court found further that the obligation was applicable retroactively to June 1, 2021, and concluded that Nunez had accrued a debt of $49,094.29 with interest in child support owed to Nichols as of April 1, 2024. The court set a payment plan.

The court also found that Nunez owed Nichols $638.73 monthly for the cost of health insurance for Daughter as additional child support. The court ordered that Nunez pay half of Daughter's reasonable and necessary health-care expenses not reimbursed by health or dental insurance.

The court found good cause to award Nichols's attorney $25,468.46 in attorney's fees to be paid by Nunez. The attorney's fees were not characterized as additional child support.

## STANDARD OF REVIEW

A trial court's order setting or modifying child support—including adult child support—will not be disturbed on appeal unless the complaining party can demonstrate a clear abuse of discretion. *Iliff v. Iliff,* 339 S.W.3d 74, 78 (Tex. 2011); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). A court abuses its discretion when it acts arbitrarily or

2

unreasonably or without reference to any guiding rules or principles  *Worford*, 801 S.W.2d at 109; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its application of that discretion.  *Thompson v. Smith*, 483 S.W.3d 87, 92 (Tex. App.—Houston [1st Dist.] 2015, no pet.).  We conduct the applicable evidentiary sufficiency review when considering the first prong of the test then determine whether, based on the elicited evidence, the trial court made a reasonable decision.  *Id*. at 92-93.

In an appeal from a bench trial, a trial court's findings of fact have the same weight as a jury's verdict.  *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When the appellate record includes a reporter's record, as is the case here, "findings of fact are not conclusive and are binding only if supported by the evidence." *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question."  *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *see City of Keller v. Wilson*, 168 S.W.3d 802, 810, 827-28 (Tex. 2005) (describing legal-sufficiency review of evidence)[1]; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (describing factual-sufficiency

---

[1]  When conducting a legal sufficiency review, we credit favorable evidence if a reasonable factfinder could do so and disregard contrary evidence unless a reasonable factfinder could not.  *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).  We consider the evidence in the light most favorable to the finding under review, and we indulge every reasonable inference that would support the finding. *Id*. at 822.

3

review of evidence).[2] "In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses." *Southwestern Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied)).

The amount of an award of attorney's fees is reviewed for an abuse of discretion, though the party seeking fees must document the hours expended on the litigation and the value of those hours. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012) (discussing attorney's fees awards generally); *King v. King*, No. 03-22-00329-CV, 2023 WL 3873496, at *14 (Tex. App.—Austin June 8, 2023, no pet.) (mem. op.) (discussing attorney's fees in a suit affecting parent-child relationship).

## DISCUSSION

Nunez challenges several aspects of the child-support order, contending that the trial court abused its discretion or erred in making the decision challenged because the record contained no or insufficient evidence supporting that decision. We will assess the sufficiency of the evidence as part of our review of the trial court's exercise of discretion on each of these grounds. We will consider some of the overlapping issues together.

**I.     The trial court did not abuse its discretion by ordering that Nunez pay child support.**  (Issues I – II)

Nunez contends that the trial court should not have ordered him to pay child support.

---

[2] In conducting a factual sufficiency review, we set aside the verdict only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We consider all the evidence supporting and contradicting the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989).

### A. Standards for requiring parental support

A court may order either or both parents to provide for the support of an adult child for an indefinite period if it finds that

(1) the child, whether institutionalized or not, requires substantial care and personal supervision because of a mental or physical disability and will not be capable of self-support;  and

(2) the disability exists, or the cause of the disability is known to exist, on or before the 18th birthday of the child.

Tex. Fam. Code § 154.302(a).  The court must designate a parent or other person having physical custody or guardianship under a court order to receive the support for the child.  *Id*. § 154.302(b).

The Legislature did not define key words in the statute, but we apply definitions understood by a person of ordinary intelligence.  *Canales v. Paxton*, No. 03-19-00259-CV, 2020 WL 5884123, at *4 (Tex. App.—Austin Sep. 30, 2020, pet. denied).  A person can have an objective physical disability but not require parental financial support because the person has capabilities that offset the disability.  *See In re J.M.C.*, 395 S.W.3d 839, 841-43, 846 (Tex. App.—Tyler 2013, no pet.) (holding legally-blind adult not disabled because he traveled to shop, dine, bank, worship, and recreate, lived alone; prepared his own meals; and kept apartment clean).  But a person who can work outside the home might need such consistent supervision that they require parental financial support.  *See Thompson*, 483 S.W.3d at 91-92, 94-95 (finding that adult with congenital disability worked outside home but could not retain information day-to-day and needed supervision and assistance with dressing, hygiene, laundry, cooking, and other chores; she also had depression that prompts anger and outbursts with physical manifestations).

5

**B. Arguments and evidence**

Nunez asserts that, although Daughter may need some supervision, she does not need "substantial care and personal supervision because of a mental or physical disability" as required by statute. *See* Tex. Fam. Code § 154.302(a)(1). He argues that Daughter is capable of self-support, getting a job, and going to college.

Daughter is not currently in school and has not been in public school since she was fourteen years old. She has a restricted driver's license and has driven only in parking lots and on a country road. In 2022, she flew back from Illinois alone from a visit with her boyfriend whom she met online, and the next year took a train to and from Illinois to visit him. Nunez notes that Mary-Jane Warren, a psychiatric mental health nurse practitioner who has worked with Daughter since 2014, said Daughter does not take her medications as directed and reported not having academic interests or goals. Though Daughter attempted suicide in 2021, Warren testified that Daughter said that it was an impulsive act intended to get attention. Warren testified that Daughter said she wanted to get away from her mother and complained about her interactions with her stepfather. Warren believed that Daughter in 2021 was limiting herself to 500 calories per day and was not drinking water, which would leave her dizzy, weak, and not thinking clearly. Nichols had unsuccessfully applied for disability benefits for Daughter.

Nunez hired Dr. Deacon Staggs to review Daughter's medical records. Staggs said he could not determine whether she could work without her having a vocational assessment, accessing the job accommodation network, or hiring a vocational rehabilitation specialist. Staggs said he did not see any indication that Daughter was incapable of employment. He opined that Daughter is likely capable of more than she thinks and that getting a job would help her self-esteem, but she has to make the effort.

6

Nichols responds that Nunez's narrow focus on what Daughter has done ignores evidence of her disability and need for care and supervision. Nichols pointed to Staggs's testimony that he did not disagree with her diagnoses and that she was getting appropriate care. He stated, "I'm not saying she could go right now and go into a job," but touted the help of the Texas Workforce Commission and future possibility of employment.

Daughter has lived with Nichols since the 2008 divorce. Nichols testified that Daughter was diagnosed with migraines at age six and had her first epileptic seizure at age twelve. She has been restricting food intake and purging since age twelve. Daughter was in a psychiatric hospital for two weeks in 2014. After a suicide attempt at age seventeen, Daughter was admitted to an acute psychiatric hospital for two weeks followed by forty-five days in a residential facility. In 2020-21, she went to a facility for two months for help with her eating disorder. Daughter was diagnosed with Postural Orthostatic Tachycardia Syndrome (POTS) which requires medication and a stent. Nichols testified that she understood that when someone with POTS changes position in standing, "your heart races and your blood pressure may drop. In simple terms, you feel terrible, and—it's a lot more complex than that, but common symptoms are fatigue and brain fog and passing out or tunnel vision." Nichols testified that Daughter mostly sleeps and lies or reclines in bed. She said that Daughter was scheduled to have surgery for arthritis in her hips.

Records from Dr. Howard Cohen showed fourteen medications and several diagnoses including complex pain, Ehlers-Danlos syndrome, hypermobility type with POTS and vascular compression syndrome, major depressive disorder with obsessional traits, autism-spectrum disorder, social phobia, ADHD, anorexia bulimia, and probable borderline personality disorder. Cohen also listed a history of complex partial seizures and post-traumatic

stress disorder. He described Daughter as a "complex patient with difficult-to-treat depression in addition to her multiple medical issues."

Nichols highlighted Warren's testimony that Daughter is "chronically suicidal" and "has suicidal thoughts on a daily basis." She described Daughter as "fully capable" but that "her emotional difficulties" interfere with her ability to get a GED and participate in any program that would require her to sit and focus and meet requirements.

Daughter testified that she wants to get well enough to have a functional life. She formerly wanted to be a neurologist but had no plan to get her GED. She said she had refused Nichols's attempts to prompt her to get a GED "out of inability to do so at the moment." She wanted first to figure out how to fix her underlying health conditions. She testified that she drove a car at her stepfather's behest on a country road and in parking lots but stopped when she had panic attacks. She said she was informally offered a scholarship for gaming but could not accept it because she had not completed her GED. She said she had not applied to the Job Accommodation Network to learn what accommodations might be available for her. She said she had not accessed any kind of supported employment programs through Texas Workforce Commission or other entities because she does not feel well. She had not hired a vocational rehabilitation specialist and would not be willing to see one.

During Daughter's testimony, the court took a break for Daughter. The court later observed, "I think we have substantial evidence that she is facing severe depression and anxiety. And I don't know that it was in her best interest to have to come testify here. And that was sort of distressing to watch."

Nichols testified that Daughter could not participate in a job-training program because she must lie down a lot and has social anxiety. She said Daughter must shower lying

8

down. She testified that Daughter tried to make money with online gaming but stopped after a panic attack.

### C. Application

Viewed under both the factual- and legal- sufficiency standards, we conclude that the record contains sufficient evidence to support the trial court's exercise of its discretion in ordering Nunez to provide financial support to Daughter. While there is some evidence that Daughter has traveled, the record is replete with diagnoses of debilitating physical and mental conditions that cause Daughter to have needed substantial care and personal supervision and been incapable of self-support since before she was eighteen years old and at the time of trial. If Daughter's circumstances change with successful treatments, the support order can be revisited.

We conclude that Nunez has not shown that the trial court abused its discretion by ordering him to pay child support for Daughter. We overrule issues I and II.

## II. The trial court did not abuse its discretion in setting the amount of support. (Issues III–XII)

Nunez challenges the trial court's finding that $1,266.49 in monthly support was appropriate, its related finding of an accrued arrearage of $49,094.29, and its order that he pay $638.73 to reimburse Nichols for health insurance she obtained.

### A. Standards for setting the amount of support due

In setting the amount of support, the court must consider these factors:

(1) any existing or future needs of the adult child directly related to the adult child's mental or physical disability and the substantial care and personal supervision directly required by or related to that disability;

9

(2) whether the parent pays for or will pay for the care or supervision of the adult child or provides or will provide substantial care or personal supervision of the adult child;

(3) the financial resources available to both parents for the support, care, and supervision of the adult child; and

(4) any other financial resources or other resources or programs available for the support, care, and supervision of the adult child.

*Id*. § 154.306. The expenses awarded need not arise exclusively from the disability. *Thompson*, 483 S.W.3d at 96. General living expenses can be awarded when the person's disabilities render her unable to work and require substantial care and personal supervision; that care and supervision can be provided by a custodial parent in their home. *Id*.

When the obligor is responsible for an additional child, the court can assess child support at 17.5 percent of the obligor's available net resources. Tex. Fam. Code § 154.129. In ordering retroactive child support, the court shall consider the net resources of the obligor during the relevant period. *Id*. § 154.131(b).

"The guidelines for support of a child are based on the assumption that the court will order the obligor to provide medical support and dental support for the child in addition to the amount of child support calculated in accordance with those guidelines." *Id*. § 154.064.

## B. Arguments and evidence

Nunez does not challenge the calculation of his net monthly resources or the court's calculation of the amounts due. He contends instead that no evidence connected any of Daughter's existing or future needs to her disability and the care and supervision required. He contends that there is no evidence that Nichols pays for or will pay for any such care or supervision or provides or will provide substantive care or supervision of Daughter. He notes

10

that Nichols receives disability payments but has not worked full-time since September 2013 and has no plans to do so. He observes that Nichols's estimate that she would need $2,191.34 to cover Daughter's expenses includes a $700 rent payment even though Daughter has no income and lives in Nichols's mortgage-free home. Nunez emphasizes that Daughter has not taken advantage of programs available to help her find work and accommodations.

Nunez asserts that the support order will make it difficult to take care of the reasonable needs of himself and his family, including a child. He makes $9,912 monthly for eleven months per year as a high-school teacher. He testified that he takes home approximately $6,500 per month; after his rent and child-related expenses, he has $1,500 left each month. He has health insurance, but it does not provide coverage where Daughter lives.

Nunez asserts that the trial court abused its discretion by rendering the $49,094.29 arrearage judgment and requirement that he pay $200 monthly for the arrearages. He asserts that it would take him 120 years to pay off the arrearages even without accruing interest. He contends that the trial court failed to consider his net resources and the undue financial hardship on him and his family.

Nichols contends that, while she is not paying others to care for Daughter, as a nurse who is not working outside the home, she is uniquely qualified and positioned to provide Daughter's care. She provided evidence that her monthly disability income totals $2,194. Her monthly budget in evidence shows a monthly shortfall of $3,800 in caring for her and Daughter's needs. Though she has no mortgage debt, Nichols's budget showed monthly household expenses of $550 for real-property taxes, $150 for home insurance, $710 monthly for utilities (including power, water, telephone, and internet), $880 for groceries and household items ($350 for Daughter's), $2,079 in health expenses ($836.34 for Daughter), $160 for clothing expenses ($80

11

for child), $460 for transportation ($75 for Daughter), and $440 in miscellaneous expenses ($150 for Daughter).  These expenses totaled $6,024 for the household, of which $2,191.34 were for Daughter.

### C.    Application

The trial court decided to apply the guideline amount for support, which is rebuttably presumed to be in the best interest of the child.  Tex. Fam. Code § 154.122.  The budget and Nichols's testimony provide some evidence of Daughter's needs.  The evidence that Daughter's disabilities prevent her from working currently means that the general living expenses can properly be considered even when some of those expenses are shared with Nichols. *See Thompson*, 483 S.W.3d at 96.  Nichols testified that she cares for and supervises Daughter in her home.  Nichols's available resources are less than Nunez's and she projects a substantial monthly deficit.  There was evidence that Daughter's application for disability benefits was denied but that Nichols was exploring options for obtaining them.  There was evidence of resources available to help Daughter obtain employment income, countered by evidence that her disabilities made her not currently capable of sustaining the effort needed to access those services or maintain employment.

There is no argument that the child-support order exceeds the statutory guidelines, only that the award fails to take into account all relevant circumstances.  There are several statutory factors that could justify departing from the guidelines such as the age and needs of the child, the ability of the parents to contribute to the child's support, the obligee's net resources, and either parent's obligations for other children.  *See* Tex. Fam. Code § 154.123.  Our review of the record does not show that the trial court ignored relevant considerations, only that it made an

award based on the evidence before it. We conclude that Nunez has not shown that the trial court abused its discretion by ordering him to pay child support at an amount within the statutory guidelines.

The same evidence and analysis control our review of the award of arrearages. Nunez does not complain of a miscalculation, only that the trial court failed to consider his resources during the relevant period and whether the order would impose an undue financial hardship on him or his family. There is no showing that the trial court failed to consider applicable considerations. The statute prohibits only the imposition of "undue" financial hardship. *See id*. § 154.131(b)(3). The evidence showed financial hardship on all parties. Nunez did not show that the trial court abused its discretion by finding the amount of arrearages it did.

The order that Nunez pay for health insurance is not an abuse of discretion. The only evidence is that Nichols is providing health insurance for Daughter and that the insurance is needed. The Legislature expressly designed the guidelines with "the assumption that the court will order the obligor to provide medical support and dental support for the child in addition to the amount of child support calculated in accordance with those guidelines." *Id*. § 154.064. There is no challenge regarding the appropriateness of the amount awarded. Nunez did not show that the trial court abused its discretion by ordering him to reimburse Nichols for her payment for Daughter's health insurance consistent with that statutory assumption.

We overrule issues III through XII.

**III.** **The trial court did not abuse its discretion by requiring Nunez to pay Nichols's attorney's fees.** (Issues XIII – XIV)

Nunez contends that the trial court should not have ordered him to pay $25,468.46 of Nichols's attorney's fees. He contends that the attorney's testimony and evidence were insufficient to support the award.

### A. Standards for attorney's fees award

Attorney's fees are awarded for reasonable hours worked multiplied by a reasonable hourly rate. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501 (Tex. 2019). Evidence of reasonable and necessary attorney's fees includes, at minimum, "evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 502. Billing records are not required but "strongly encouraged" to prove the reasonableness and necessity of requested fees when contested. *Id.*

### B. Arguments and evidence

The record contains Nichols's attorney's fees bills and the attorney's testimony that he has practiced law in Texas since 1999 and has been board certified in family law since 2004. He said he practices exclusively family law in Travis County and adjoining counties and is familiar with the reasonable and customary charges of family attorneys. He said he charges $450 per hour; his paralegal charges $200 per hour. He introduced billing records that he redacted but offered to provide the court an unredacted copy. He provided a summary sheet

14

claiming a total of $25,468.46 in attorney's fees paid, billed, and projected through the end of trial.

Nunez contends that Nichols's attorney's records were so heavily redacted that it was impossible to ascertain what work was done. Nunez contends that the summary of the attorney's fees was conclusory. Nichols contends that the bills were redacted to protect attorney-client privilege and that her attorney's offer to provide unredacted copies for the court's in-camera review mooted the complaint about the redactions. Nunez did not request such review.

## C. Application

The determinative factor is whether the bills provide sufficient evidence to support the trial court's exercise of discretion regardless of how much or little they were redacted. *Person v. MC-Simpsonville, SC-1-UT, LLC*, No. 03-20-00560-CV, 2021 WL 3816332, at *9 (Tex. App.—Austin Aug. 27, 2021, no pet.) (mem. op.).

While the redactions eliminated information that would have tied the bill items to particular actions in this case, Nichols's attorney testified that the billed items related to this case. But the redactions eliminated information that would have allowed Nunez to challenge the claim that the charges were reasonable. This evidence is much like what we found insufficient in *Person*, where we wrote:

> the majority of entries on the redacted billing records show only that an attorney or other legal professional had a telephone conference with somebody about something, emailed somebody about something, discussed something with somebody, reviewed something, researched something, drafted something, coordinated something, or worked on something. As a whole, the redacted billing records admitted in evidence were not sufficient, in light of the supreme court's admonitions in *Rohrmoos* concerning the need to identify specific tasks

15

performed, to allow the trial court to evaluate the reasonableness and necessity of hours worked[.]

*Id.* at *9. Nichols's attorney's testimony did not fill in the gaps.

Nichols argues that her offer to provide the court with unredacted copies of the billing statements—and Nunez's failure to request such submission—moots Nunez's complaint regarding the redactions. But Nichols bears the burden to prove the reasonableness and necessity of her attorney's fees requested. *See Rohrmoos*, 578 S.W.3d at 484. The record before the trial court did not include the unredacted records, and we find no authority that evidence not in the record must be presumed to support the award.

We conclude that Nichols provided more than a scintilla of evidence that she incurred reasonable and necessary attorney's fees; accordingly, we decline to render judgment that Nichols take nothing on her claim for attorney's fees. But the evidence is not sufficient to support the trial court's exercise of discretion in awarding every charge claimed. We reverse the award of attorney's fees and remand that issue to the trial court for further proceedings.

We sustain in part and overrule in part issues XIII and XIV.

## CONCLUSION

We affirm the order assessing child support for the adult child, including the monthly support award, the award of past support, and the monthly insurance reimbursement. We reverse the award of attorney's fees and remand for further proceedings on that issue.

_____

Darlene Byrne, Chief Justice

16

Before Chief Justice Byrne, Justices Theofanis and Ellis

Affirmed in Part, Reversed and Remanded in Part.

Filed:   April 30, 2026